Estate of L. J. Burda, Louise Burda, Independent Executrix v. Commissioner.
Estate of Burda v. Commissioner
Docket No. 112690.
United States Tax Court
1943 Tax Ct. Memo LEXIS 189; 2 T.C.M. (CCH) 497; T.C.M. (RIA) 43350; July 21, 1943
*189 E. H. Suhr, Esq., 2201 Second Nat'l Bank Bldg., Houston, Tex., for the petitioner. Frank B. Schlosser, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: Respondent determined a deficiency in estate taxes in the amount of $8,771.71. The basis of this determination, the correctness of which is the sole issue raised here, is the fair market value of shares of stock in the Maintenance Engineering Corporation of Houston, Texas, as determined by the respondent. The proceeding was submitted on a stipulation of facts, exhibits, and oral testimony. The stipulated facts are found as stipulated. Hereinafter follows a resume of the pertinent facts which, in so far as they do not appear in the stipulation, are found from the testimony. Findings of Fact Petitioner is the duly qualified and acting Independent Executrix of the Estate of L. J. Burda, who died testate on January 14, 1942 while a resident of Houston, Texas. A timely estate tax return was filed with the collector of internal revenue for the first district of Texas at Austin, Texas. At the time of his death, L. J. Burda was the owner of an undivided one-half interest in 7,975 shares of Class A *190 voting stock and 7,975 shares of Class B non-voting stock of Maintenance Engineering Corporation. In his estate tax return such stock was valued at $3 per share. The respondent increased this valuation to $10 per share, and determined a deficiency in the sum of $8,771.71 against the estate. Maintenance Engineering Corporation was organized on April 1, 1924, with a capitalization of $5,000. The business in which the corporation is engaged, buying and selling steel products, principally oil field supplies, is highly competitive. On January 14, 1942, Maintenance Engineering Corporation, a Texas corporation, had a total capitalization of 120,000 shares, each share having a par value of $1. It was divided into 60,000 shares Class A stock having voting rights, and 60,000 shares Class B stock having no voting rights. The following is a balance sheet taken from the books of the Maintenance Engineering Corporation as of December 31, 1941, the date nearest the date of death, and on which the assets are stated at their correct and fair market values: Assets
Cash
$79,778.80
Notes Receivable
1,776.12
Accounts Receivable
88,369.39
Inventory
186,587.80
Securities
68,957.83
Warrants Receivable
3,409.66
U.S. Treas. Notes
41,200.00
Deferred Charges
1,309.95
Autos
12,708.03
Delivery Equipment
1,303.47
Furniture & Fixtures
4,770.35
Machinery & Equipment
8,897.90
Land
16,300.00
Buildings
37,453.64
Spur Track
1,327.02
Shelving & Laboratory
429.47
$554,579.43
Liabilities and Capital
Accounts payable
$ 47,154.81
Federal & other taxes
111,648.60
Common stock outstanding
(120,000 shares)
120,000.00
Surplus
275,776.02
Total
$554,579.43
*191 Maintenance Engineering Corporation had a net worth of $395,776.02 on December 31, 1941. From January 1, 1937 to December 31, 1942, Maintenance Engineering Corporation paid the following dividends: For 1937
$120,000 or $1.00 per share
For 1938
48,000 or.40 per share
For 1939
38,400 or.32 per share
For 1940
76,800 or.64 per share
For 1941
48,000 or.40 per share
For 1942
48,000 or.40 per share
C. E. Naylor, who is 52 years of age, is president and manager of the corporation. His title first was chairman of the board but that title was later abolished. He has served in the same capacities since the corporation was organized in 1924. Although at the date of death of decedent the Maintenance Engineering Corporation had some 30 or 40 employees, 6 or 7 of whom were salesmen on the road, the business of the company with the large majority of the business houses for which the company was an outlet and those to whom it distributed was the result of the prior and continuing contacts of C. E. Naylor. C. E. Naylor and his wife, Marie B. Naylor, owned, on January 14, 1942, 31,250 shares of Class A stock of the corporation, being 52.08 per cent of the voting stock. C. E. Naylor *192 has voted the stock he and his wife own in the corporation for at least 15 years. Neither stock was listed on any Exchange. From April 25, 1941 to November 7, 1941, C. E. Naylor sold 3,650 shares of Class B stock of the corporation. Of these, 2,050 shares were sold at $4 per share, and 600 shares were sold at $3.80 per share. From February 21, 1942 to February 24, 1942 there were sold 1,500 shares of Class B stock of the corporation for $3 per share. Between September 1, 1942 and March 30, 1943, there were sold 1,900 shares of Class B stock. Of these, 1,500 shares were sold $3at per share, 100 shares were sold at $3.80 per share, and 300 shares were sold at $4 per share. From September 1, 1942 to September 5, 1942, there were sold 150 shares of Class A stock at $4 per share. All of these sales and purchases were voluntary. These sales totaled 28 in number, in 6 of which neither the buyer nor the seller was connected with the company. In two others, the purchaser was not so connected and in 7 others the seller was not connected with the company. In such of these sales as occurred by employees when they left the employment of the company and they resold their stock to officers *193 or other employees, the price at which it was sold was the same at which they purchased it. The following statement shows, with respect to the Maintenance Engineering Corporation, its invested capital as of the beginning of the year, the net earnings after the deduction of Federal income taxes, and the dividends paid for each of the years 1937 to 1941, inclusive: Earnings
after
Deduction of
Invested
Federal
Dividends
Year
Capital
Taxes
Paid
1937
$134,957.18
$147,792.62
$120,000
1938
162,749.80
89,166.44
48,000
1939
203,844.41
85,885.97
38,400
1940
252,755.38
122,676.83
76,800
1941
302,075.93
141,700.09
48,000
The fair market value of the 7,975 shares of Class B non-voting stock of Maintenance Engineering Corporation and the 7,975 shares of Class A voting stock of Maintenance Engineering Corporation was $5 per share at the date of decedent's death and the value of the decedent's community interest therein at that date was $39,875. Opinion In the estate tax return all the stock, without regard to class, with the value of the decedent's community interest in which we are here concerned, was valued at $3 per share, as of the date of *194 decedent's death. Respondent, in determining the deficiency, increased this value to $10 per share, without distinguishing the classes to which it belonged. There is no attempt here by either party to differentiate the valuation of the two classes of stock involved, so we accept them as equal in fair market value. The respondent concedes on brief that the basis of his determination of value was as follows: "Respondent determined a value of $10.00 per share by capitalizing at 10% the average net earnings of the corporation over the five year period 1937 to 1941, inclusive." We think that was an insufficient basis, without more, to support the finding of value upon which respondent supports the contested deficiency. As we said in : The Board is in no position to "find that the value should be computed on the basis of average net income," for the question of fair market value is ever one of fact and not of formula. Net earnings are important, but they are only one of the many factors upon which value of shares may be considered, and the significance to be given to such figures depends upon the evidence of all the *195 circumstances in which they are found. Cf. James Couzens, supra, (at 1170). Without knowledge of the setting in which the earnings appear, they lack substantial evidentiary force from which a useful inference of fair market value can be drawn. Furthermore, it would be entirely unwarranted for the Board, without evidence supporting it, to select a multiple of average earnings as the basis for a finding of fair market value. It is true that we sustained the fair market value determined by the respondent in that case but we did so only because * * * The evidence does not contain data upon which a finding can be made that the fair market value of the shares was less than the $35 a share which the Commissioner has determined. That value must be adopted, not because of the stipulated formula of ten times average earnings, but because there is no adequate evidence proving it to be incorrect or another figure to be correct. On appeal the First Circuit, in effect, affirmed the Board's holding that the question of fair market value is always one of fact and never one of formula, but reversed the Board in its conclusion that the stock was worth $35 per share *196 on the critical date. . The case here is much stronger for the petitioner than was that in the cited case. It is true that Maintenance Engineering Corporation, apparently from its inception, had been highly successful and prosperous; that its dividend policy had been consistently liberal; and that as of December 31, 1941, just two weeks before decedent's death, its balance sheet showed an excellent financial condition. On the other hand, its business was highly competitive. Its success was largely due, apparently, to the efforts of C. E. Naylor who, together with his wife, controlled the company. The book value of the stock was $3.40 per share as of January 31, 1942, two weeks before decedent's death. The stock was unlisted even locally. A substantial number of shares of both classes of stock were sold, however, between April 25, 1941 and September 5, 1942, at prices varying from a low of $3 per share to a high of $4 per share. No authority need be cited for the rule that bona fide sales and purchases are, under ordinary circumstances, entitled to great weight in the determination *197 of fair market value. It may be admitted that a large part of this stock was sold or resold to employees for the purpose of keeping them interested in the business, but even so the sales were voluntary and can not therefore be deprived of all the weight to which they would otherwise be entitled. Moreover, petitioner introduced the testimony of two witnesses, each of whom expressed an opinion on the fair market value of this stock on the critical date. Respondent admitted the qualifications of one of these witnesses. That witness fixed the value of the stock in dispute at $5 per share as of the date of decedent's death. His reasons supporting that valuation were, in the main, sound in our judgment. Respondent neither discredited him on cross-examination nor did he introduce the testimony of any witness on his part. See . Thus, giving effect to the fact that some of the sales and purchases of Maintenance Engineering Corporation stock listed in our findings of fact were colored, to some extent, by a desire on the part of the seller to maintain the interest of the purchaser in the business of that company, we think, and have so *198 found, that the stock, the value of the community interest of the decedent which is in issue, was worth $5 per share on the critical date. Decision will be entered under Rule 50.